Yes. Good morning, Your Honors. May it please the Court, I'm Kelly Walsh on behalf of Global Linguist Solutions and Zurich American Insurance Company. I would like to reserve two minutes for rebuttal, please. Okay. The issue in this case comes down to whether or not the lower courts erred in finding that the respondent, Mr. Abdulraouf Abdelmeged, met his burden of proving by substantial evidence that his psychological impairment rendered him disabled, meaning that he had both a medical condition that resulted in diminished earning capacity from a time period from November 9, 2009, when he returned from Iraq after having tested positive for hepatitis C, up to a psychiatrist, Dr. Pock. Now, while the lower courts have cited the correct standard and burden of the law judge and the Benefits Review Board, they've noted that there is a substantial evidence standard and that the claimant, they've cited that correctly, but it is our position that they didn't apply the burden correctly because there is so they didn't consider all of the substantial evidence that weighs against the evidence. That doesn't matter, does it? It's whether there's substantial evidence in the record as a whole. So if there's substantial evidence that supports him, why isn't that sufficient? Because the claimant, while he has the burden of proof, it's the burden of proof as persuasion. They have to persuade the Court. And you have to take into account the evidence that detracts against what has been produced by the claimant. Kagan. But at some point, they have to choose, and they chose one of them. I do. And our question is whether it's substantial. Yes. Okay. And I would argue that it's not substantial. I would argue two things, that the burden wasn't applied properly, and that what the evidence produced by the claimant wasn't substantial when you consider the evidence as a whole. And one of the ways, because this is a psychological impairment, these are always kind of difficult to nail down a disability date, because it's often not immediately treated, not immediately reported. And so that's why the administrative law judge in the decision in order, he cited this case, but not for this proposition, but the Blankenship v. Zeldwin case from the Sixth Circuit. And I think this is a really good case to look at, because it verbalizes exactly what you should consider with these psychological impairments. And note that, you know, it's with slowly progressive impairments, it's difficult to establish a precise date of the onset of the impairment, that the impairment caused disability. Kagan. But so essentially you're arguing, let me back up. You have a witness, Dr. Moe, who testified or said or diagnosed, essentially the same, had the same diagnosis that Dr. Pock had, but just with a different name. In reading through this, it appears that Dr. Moe diagnosed a maladaptive personality trait, but in reading his description or her description of it, it appears to be the same thing as PTSD, which is what Dr. Pock's diagnosed him with. And you're talking about the difficulty in diagnosing when these diseases began. But Dr. Moe goes ahead and says that it was a preexisting condition to the 2009. So I'm having trouble deciding what the difference is between those diagnoses. Okay. I do believe that PTSD diagnosis and the maladaptive personality disorder are two distinct diagnoses per the DSM. It was four at the time. Now we have the DSM-5. But, you know, it's not necessarily the diagnosis of the physical impairment that's at issue here. It's when that physical, not, I'm sorry, I said physical impairment, it's psychological impairment. It's when that psychological impairment became disabling such that you had a diminished earning capacity. And I think that is, that's the crux of this, is that whether he was suffering from and diagnosed with this maladaptive personality disorder, which, you know, Dr. Moe believed preexisted his employment, or it was after, it's when it becomes disabling. And we think this period from November 2009 to December of 2011, that that, there's not substantial evidence to show that it reduced, it was at such a level that it reduced the, Mr. Abdelmagedd's earning capacity. And the, if you look at the evidence of what happened, that's why I think the Blankenship versus Vohen case is really helpful in this regard, because, as they say, it's necessary to infer, because of the difficulty with this physical impairment and when it becomes disabling, it's necessary to infer the onset of disability from medical and other evidence that describes the histories and symptomology. So the diagnosis is based on the reports of these symptoms, because you don't have, there's not a CT scan that can be done or an MRI for a psychological impairment. So you look at the history and symptomologies. And when you look at the history from 2009 through 2011, I don't believe that there's substantial evidence to support that. Sotomayor, Well, there is his own report of his symptoms. Yes. Sotomayor, All right. Is that not substantial evidence? No, I don't believe, because, first of all, symptoms in and of themselves do not create a disability. Now, if you go through the symptoms that he's reported, and this is when he testified, he reported these after the fact. So, but whether or not he testified and reported when they occurred, if you look at his trial testimony and the other reports, and you parse this out, there's really two symptoms that he reported that had arisen, that he reported when he returned from Iraq in November 2011. Sotomayor, He had a whole list, a big list. Sotomayor, He had a whole list. But if you parse them out and you look at the record, two that were reported to, that he was experiencing upon his return, nightmares. But these were nightmares. He also had nightmares in 2001 prior to his employment. And he said in the trial transcript that the way to make it, this whole case is set up such that we now, you are not challenging the ultimate conclusion that, in fact, this employment caused him PTSD and caused and disabled him. Yes. Right? Right. Correct. All right. So what you're arguing now is essentially to contest that. No. Because, I mean, that's one of the problems with your position, as well as the mystery of why you're arguing about two years of workers' comp. But leaving that aside, the so insofar as Dr. Moe was essentially saying this didn't this employment was not what caused it, he didn't really have PTSD and he really wasn't what caused it, isn't that essentially issue precluded in this case? It's already been decided and you're not contesting that. So all we're trying to figure out is whether this happened in this two-year or whether he had it in the two-year period. So you can't now go back and start claiming that, in fact, he didn't have he never had PTSD and it wasn't or and or it wasn't caused by his employment. He had a different problem. We're not saying that he didn't have PT. And let me clarify. Kagan, what you just said and what Dr. Moe said, Dr. Moe did say that. Okay. Yes. And you seem to be trying to rely on that. And you can't do that. Well, what I want to clarify is that what the administrative law judge said, first of all, he said whether it was PTSD or maladaptive, he had some kind of psychological impairment. But we're not necessarily arguing that there wasn't a psychological impairment there. What we're arguing is that it wasn't such that it diminished his earning capacity that he so that in those two years he would be entitled to compensation. I understand that. But you just start up and you said, well, he had nightmares to begin with, right? But to the fact that that became those nightmares became disabling such that he couldn't work during that period, then that's when I think you look to a different point. But we know they eventually they did. So therefore, the fact that he had them earlier doesn't seem terribly, once we accept that he did have this condition that was caused by his employment, then the fact that he may have had some of the symptoms of it earlier can't be the end of the story or even terribly relevant. Well, if he had the symptoms and then he was able to work for an employer and still had the same symptoms, you would argue that his the earning capacity You would, but you haven't because you have agreed that he eventually had did have that these symptoms eventually were indicative of PTSD because it's so slowly progressing impairment. I mean, and I'll say for the record, I wanted to reserve some time. So I will I will wait. All right. Thank you. Good morning, Your Honors. Laura Merrigan here on behalf of Abdel-Rawf Abdel-Maged. In continuing to argue that this is a slow, progressive impairment like the Blankenship case, which involves schizophrenia, the petitioner is overlooking the differences between schizophrenia and PTSD and again reaching into case law to show facts. The facts of this case are that he was disabled when he came back from the war zone. Their own expert said, and this is a quote from his own report, it should be explicitly stated that whereas it is generally accepted that some individuals experience a delayed onset of PTSD, the vast majority develop symptoms of this condition near in time to the trauma responsible for it as well. Most of those with so-called delayed onset PTSD suffer subthreshold symptoms of this condition. Mr. Abdel-Maged's history does not fit with this pattern. So their own expert said this is not a delayed onset PTSD scenario. He said it wasn't PTSD. He said it wasn't PTSD, but there's no evidence that this is a delayed onset PTSD type of PTSD. He believed that there was a temporary exacerbation, pardon me, Your Honors, immediately in time. Did the agency eventually conclude it was PTSD or they said we don't know what it is, but it was a psychological impairment caused by his job? Yes, Your Honor. What? Yes. Oh, I'm sorry. PTSD. Which agency? The appellate? The ALJ did. But I thought he said one or the other. You know, it's my understanding that the ALJ held that it was PTSD, but to the extent that if I'm incorrect and the ALJ said, well, it may have been PTSD or it may have been an exacerbation, it doesn't matter. That would be true, Your Honor. It doesn't matter. It's not about the name of the diagnosis under the Longshore Act. It's about whether or not there's a disability. The petitioner's argument that the credible reports of Mr. Abdel-Maged are legally insufficient to constitute substantial evidence, that's already been rejected by the Second Circuit in Pietrunti v. Director OWCP, and there the Second Circuit reversed the ALJ's holding. So it was the opposite scenario as this case, where the ALJ here said that he should be awarded benefits. There the ALJ denied benefits on the very basis urged herein, that it was only because of the claimant's own reports. And the Second Circuit said, no, in a psychiatric case, unless you have reason to doubt that report, you cannot dismiss a treating physician's opinion that the person is disabled. And it makes sense because this isn't the sort of situation wherein you can send a patient out for an MRI to confirm that he has a meniscal tear. A psychiatric condition is almost always just going to be based on self-reports. Counsel Judge Gould, if I could interject a question. In the Ninth Circuit, do we have Ninth Circuit precedent comparable to the Second Circuit case you just mentioned? Your Honor, we do on the legal issue of crediting a treating physician, and that would be the Amos v. Director OWCP case. That case, though, was an orthopedic injury, not a psychiatric injury. Okay. Thank you. Unless Your Honors have further questions, I believe that the briefs speak to the main issues here. This is a factual appeal. It was within the ALJ's discretion. What about this oddity about, you know, where this case is supposed to be brought? I mean, do we need to write an opinion about this? It seems like the statutes are pointing in various directions at various times, and it would make no sense in the world to bring it where the ALJ's office is, because it's ALJ's, I gather, are just assigned all over the country. But is that what the statute seems to say? As Your Honor noted, it is a little bit vague. I believe the Pierce decision has resolved. The Pierce decision wasn't directly about that. It was about — it did read against the statute on a just common-sense ground, and you're essentially suggesting we do it again. Yes, Your Honor. The one thing that I would urge this Court against — and, of course, it couldn't do it unless it was sitting on bonk regardless because of the Pierce decision — would be to follow the circuits that have held that these types of cases need to be brought first to the district court. The Benefits Review Board was created in 1972 to eliminate that procedure, and the indications are that it was mere oversight, that the Defense-Based Act was not amended at the same time as the Longshore Act was. But there are some circuits that still do that anyway. Yes, Your Honor. In my overly long statement of jurisdiction, I touched upon the circuit split. But as this Court has noted elsewhere, the case name is eluding me right now, but Judge O'Scanlan wrote a dissent about three years ago in a case stating that were it up to him, he would throw it back to the district courts. But he acknowledged there that it was not up to him because of the Pierce case. All right. It was a concurrence. I'm sorry, Your Honor. It's not a dissent, of course. Okay. Thank you. Thank you. Anything else? Yes, Your Honors. I just want to very briefly go to point out that with regard to a diminished earning capacity, if you look at the actions of the claimant in the period upon his return, you will see an active attempt to get real to get real. He made an attempt, but, in fact, he had a greatly diminished earning, actual earnings, because he couldn't keep a job, as it turned out. But couldn't keep a job, there's no evidence to point that was because of his psychological impairment. There's just no evidence in the record of it at all. I mean, there's nothing to show that he couldn't keep a job for that reason. But it doesn't cut the other way. He was trying to get a job, and he was trying to work, and he wasn't able to get a job, apparently, partly because he couldn't even fill out the papers, or when he went to Iraq, he wasn't able to follow through on picking up what he was supposed to pick up. And as to then he did get a couple jobs, and he was, in one case, discharged rather quickly. So the fact that he was trying, if he weren't trying, then you could say, well, this looks like a, you know, a malingerer, but he wasn't a malingerer. Well, he testified, as far as being able to fill out the application, he testified differently than that. He testified at trial that he did. He wasn't precluded from filling out the application. That wasn't the problem. They just didn't get it. So I would say, you know, he filled it out. He's not saying he couldn't. So he could have gone back to work with the employer, but he didn't send it in. So there was, you know, but he didn't say he couldn't do it because he couldn't figure it out. And he said he went to the — What was his explanation for why he didn't do it? Oh, he said he did it, and he sent it, and they just didn't get it because they didn't want to — and they didn't contact him back about employment. Okay. Your time's up. Thank you very much. Thank you. Thank you both for your arguments. The case of Global Linguist Solutions v. Abdelmegid is submitted. We'll take a short break. Thank you.
judges: Gould, Berzon, Marquez